(Slip Opinion) OCTOBER TERM, 2021 1

Syllabus

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## MARIETTA MEMORIAL HOSPITAL EMPLOYEE HEALTH BENEFIT PLAN ET AL. *v.* DAVITA INC. ET AL.

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

No. 20–1641. Argued March 1, 2022—Decided June 21, 2022

Petitioner Marietta Memorial Hospital Employee Health Benefit Plan is an employer-sponsored group health plan that offers all of its participants the same limited coverage for outpatient dialysis. Respondent DaVita—a major provider of dialysis services—sued the Marietta Plan, arguing that the Plan's limited coverage for outpatient dialysis violated the Medicare Secondary Payer statute. The statute makes Medicare a "secondary" payer to an individual's existing insurance plan for certain medical services, including dialysis, when that plan already covers the same services. 42 U. S. C. §§1395y(b)(1)(C), (2), (4). To prevent plans from circumventing their primary-payer obligation for end-stage renal disease treatment, the statute imposes two constraints relevant here. First, a plan "may not differentiate in the benefits it provides between individuals having end stage renal disease and other individuals covered by such plan on the basis of the existence of end stage renal disease, the need for renal dialysis, or in any other manner." §1395y(b)(1)(C)(ii). Second, a plan "may not take into account that an individual is entitled to or eligible for" Medicare due to end-stage renal disease. §1395y(b)(1)(C)(i); see §426–1. The District Court dismissed DaVita's claims that the Marietta Plan violated both statutory constraints. A divided panel of the U. S. Court of Appeals for the Sixth Circuit reversed. Among other things, the Court of Appeals ruled that the statute authorized disparate-impact liability and that the limited payments for dialysis treatment had a disparate impact on individuals with end-stage renal disease.

*Held*: Section 1395y(b)(1)(C) does not authorize disparate-impact liability, and the Marietta Plan's coverage terms for outpatient dialysis do not violate §1395y(b)(1)(C) because those terms apply uniformly to all

covered individuals.  Pp. 4–7.

    (a) Section 1395y(b)(1)(C)(ii) prohibits a plan from *differentiating* in benefits between individuals with and without end-stage renal disease.  Because the Marietta Plan's terms apply uniformly to individuals with and without end-stage renal disease, the Plan does not "differentiate in the benefits it provides between individuals" with and without end-stage renal disease.  DaVita argues that the statute authorizes liability even when a plan limits benefits in a uniform way if the limitation on benefits has a disparate impact on individuals with end-stage renal disease.  But the text of the statute cannot be read to encompass a disparate-impact theory.  The statutory provision simply coordinates payments between group health plans and Medicare; the statute does not dictate any particular level of dialysis coverage.  Pp. 4–7.

    (b) DaVita's contention that a plan that provides limited coverage for outpatient dialysis impermissibly "take[s] into account" the Medicare eligibility of plan participants with end-stage renal disease fails for the same reason.  Because the Marietta Plan provides the same outpatient dialysis benefits to all Plan participants, whether or not a participant is entitled to or eligible for Medicare, the Plan cannot be said to "take into account" whether its participants are entitled to or eligible for Medicare.  Pp. 7.

978 F. 3d 326, reversed and remanded.

    KAVANAUGH, J., delivered the opinion of the Court, in which ROBERTS, C. J., and THOMAS, BREYER, ALITO, GORSUCH, and BARRETT JJ., joined.  KAGAN, J., filed an opinion dissenting in part, in which SOTOMAYOR, J., joined.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 20–1641

## MARIETTA MEMORIAL HOSPITAL EMPLOYEE HEALTH BENEFIT PLAN, ET AL., PETITIONERS *v.* DAVITA INC., ET AL.

### ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

[June 21, 2022]

JUSTICE KAVANAUGH delivered the opinion of the Court.

The question in this case is whether a group health plan that provides limited benefits for outpatient dialysis—but does so uniformly for all plan participants—violates the Medicare Secondary Payer statute. We agree with petitioner Marietta and the United States as *amicus curiae* that the answer is no. We therefore reverse the judgment of the U. S. Court of Appeals for the Sixth Circuit and remand the case for further proceedings consistent with this opinion.

## I

### A

Medicare provides health insurance coverage for those who are 65 or over, or are disabled. In 1972, Congress extended Medicare coverage to individuals with end-stage renal disease, regardless of age or disability. See Social Security Amendments of 1972, §299I, 86 Stat. 1463; 42 U. S. C. §426–1. That benefit now covers hundreds of thousands of Americans with end-stage renal disease. In the aggregate, the costs of healthcare for individuals with end-stage renal disease are high, and Medicare spends about

2    MARIETTA MEMORIAL HOSPITAL EMPLOYEE HEALTH
BENEFIT PLAN *v.* DAVITA INC.

Opinion of the Court

$50 billion annually on treatments for those individuals.

During the initial years of the Medicare program after its enactment in 1965, Medicare acted as the first payer for many medical services, regardless of whether a Medicare beneficiary was also covered under another insurance plan, such as an employer-sponsored group health plan. In 1980 and 1981, in part due to rising Medicare costs, Congress enacted and amended the Medicare Secondary Payer statute. That statute as amended makes Medicare a "secondary" payer to an individual's existing insurance plan for certain medical services, including dialysis, when that plan already covers the same services. See Medicare and Medicaid Amendments of 1980, §953, 94 Stat. 2647; Medicare and Medicaid Amendments of 1981, §2146, 95 Stat. 800; 42 U. S. C. §§1395y(b)(1)(C), (2), (4).

Given the significant costs of healthcare for those with end-stage renal disease, Congress recognized that a plan might try to circumvent the statute's primary-payer obligation by denying or reducing coverage for an individual who has end-stage renal disease, thereby forcing Medicare to incur more of those costs. To prevent such circumvention, the statute imposed two specific constraints on group health plans. *First*, a plan "may not differentiate in the benefits it provides between individuals having end stage renal disease and other individuals covered by such plan on the basis of the existence of end stage renal disease, the need for renal dialysis, or in any other manner." §1395y(b)(1)(C)(ii). *Second*, as relevant here, a plan "may not take into account that an individual is entitled to or eligible for" Medicare due to end-stage renal disease. §1395y(b)(1)(C)(i); see §426−1.

B

DaVita is one of the two major dialysis providers in the United States. DaVita provides dialysis to hundreds of thousands of individuals each year, including individuals insured by their employers' group health plans.

Opinion of the Court

The Marietta Memorial Hospital Employee Health Benefit Plan is an employer-sponsored group health plan. The Plan offers the same terms of coverage for outpatient dialysis to all of its participants. But under the Plan, outpatient dialysis services are subject to relatively limited reimbursement rates.

In 2018, DaVita sued the Plan, arguing that the Plan's limited coverage for outpatient dialysis both (i) differentiates between individuals with and without end-stage renal disease and (ii) takes into account the Medicare eligibility of individuals with end-stage renal disease in violation of the Medicare Secondary Payer statute. §1395y(b)(1)(C).

The District Court dismissed DaVita's claims, concluding that the Plan does not violate the anti-differentiation or take-into-account provisions of the Medicare Secondary Payer statute because the Plan's terms, including its terms for outpatient dialysis treatments, apply uniformly to all Plan participants.

A divided panel of the U. S. Court of Appeals for the Sixth Circuit reversed. See 978 F. 3d 326 (2020). Among other things, the Court of Appeals ruled that the statute authorized disparate-impact liability, and the Court concluded that the limited payments for dialysis treatment had a disparate impact on individuals with end-stage renal disease.

Judge Eric Murphy dissented in relevant part. He reasoned that the Plan's terms do not violate the statute because the Plan "offers the same benefits to all participants." *Id.*, at 358 (opinion concurring in judgment in part and dissenting in part).

The Sixth Circuit's interpretation of the Medicare Secondary Payer statute departed from the holdings of district courts that had considered the question. See *DaVita, Inc.* v. *Amy's Kitchen, Inc.*, 379 F. Supp. 3d 960 (ND Cal. 2019); *Dialysis of Des Moines, LLC* v. *Smithfield Foods Healthcare Plan*, 2019 WL 8892581 (ED Va., Aug. 5, 2019); *National Renal Alliance, LLC* v. *Blue Cross & Blue Shield of Georgia,*

4    MARIETTA MEMORIAL HOSPITAL EMPLOYEE HEALTH
BENEFIT PLAN *v.* DAVITA INC.

Opinion of the Court

*Inc.*, 598 F. Supp. 2d 1344 (ND Ga. 2009). Moreover, several weeks after the Sixth Circuit's decision, the Ninth Circuit agreed with Judge Murphy's dissent and largely rejected the Sixth Circuit's analysis. See *DaVita Inc.* v. *Amy's Kitchen, Inc.*, 981 F. 3d 664 (2020).

This Court granted certiorari to resolve the disagreement between the Courts of Appeals. 595 U. S. ___ (2021).

## II

### A

We first consider DaVita's differentiation argument. To reiterate, the relevant statutory provision states: A plan "may not differentiate in the benefits it provides between individuals having end stage renal disease and other individuals covered by such plan on the basis of the existence of end stage renal disease, the need for renal dialysis, or in any other manner." 42 U. S. C. §1395y(b)(1)(C)(ii).

That statutory language prohibits a plan from *differentiating* in benefits between individuals with and without end-stage renal disease. For example, a group health plan may not single out plan participants with end-stage renal disease by imposing higher deductibles on them, or by covering fewer services for them. See 42 CFR §§411.161(b)(2)(i)–(iv). If a plan does not differentiate in the benefits provided to individuals with and without end-stage renal disease, then a plan has not violated that statutory provision, and the differentiation inquiry ends there.[1]

---

[1] If and only if a plan differentiates in benefits between those with and those without end-stage renal disease, the next question would be whether the plan differentiates "on the basis of" (i) the existence of the disease, (ii) the need for renal dialysis, or (iii) in any other manner. 42 U. S. C. §1395y(b)(1)(C)(ii). Those three circumstances, especially the somewhat ungrammatically phrased catchall "in any other manner," appear to cover the waterfront of possible bases on which a plan might differentiate in the benefits provided to those with end-stage renal disease. In other words, if there is differentiation, the differentiation is likely on an impermissible basis. Therefore, the only meaningful question under

The Marietta Plan provides the same benefits, including the same outpatient dialysis benefits, to individuals with and without end-stage renal disease. Indeed, DaVita does not dispute that the Plan's terms apply uniformly to all Plan participants. Therefore, the Plan does not "differentiate in the benefits it provides between individuals" with and without end-stage renal disease. 42 U. S. C. §1395y(b)(1)(C)(ii).

In response, DaVita primarily argues that the statute authorizes liability even when a plan limits benefits in a uniform way if the limitation on benefits has a disparate impact on individuals with end-stage renal disease.

To begin with, the text of the statute cannot be read to encompass a disparate-impact theory. That text requires inquiry into whether a plan provides different benefits to (i) those with end-stage renal disease and (ii) those without end-stage renal disease. The text does not ask about "the *effects* of non-differentiating plan terms that treat all individuals equally." 978 F. 3d, at 363 (opinion of Murphy, J.); see also *Amy's Kitchen*, 981 F. 3d, at 674−675. In light of that plain text, it comes as no surprise that the Centers for Medicare and Medicaid Services have never adopted a disparate-impact theory in their longstanding regulations implementing this statute.

The disparate-impact theory not only is atextual but also would be all but impossible to fairly implement. The premise of the disparate-impact theory is that the plan's benefits for outpatient dialysis are inadequate. But what level of benefits would be adequate, and how would courts determine the level of benefits that qualifies as adequate?

Neither the statute nor DaVita offers a basis for determining when coverage for outpatient dialysis could be considered inadequate. And neither the statute nor DaVita

_____

this statutory provision appears to be whether the plan differentiates in benefits between those with and those without end-stage renal disease.

6    MARIETTA MEMORIAL HOSPITAL EMPLOYEE HEALTH
BENEFIT PLAN *v.* DAVITA INC.

Opinion of the Court

supplies an objective benchmark or comparator against which to measure a plan's coverage for outpatient dialysis.

Absent some benchmark or comparator, courts would have great difficulty trying to make an apples-to-apples comparison of a plan's coverage for outpatient dialysis against its coverage for other services. Group health plans cover services for many different health issues at varied rates. Those rates may reflect negotiations with third parties, the needs of a particular plan's beneficiaries, and other factors such as geography. Courts would be entirely at sea in trying to determine an appropriate benchmark or comparator for outpatient dialysis. Put simply, DaVita's approach is a prescription for judicial and administrative chaos, and further demonstrates that DaVita's disparate-impact theory is not a correct interpretation of the statute.[2]

DaVita's position would ultimately require group health plans to maintain some (undefined) minimum level of benefits for outpatient dialysis. But this statutory provision simply coordinates payments between group health plans and Medicare. As the Government itself acknowledges, the statute does not dictate any particular level of dialysis coverage by a group health plan. See Brief for United States as *Amicus Curiae* 13. If Congress wanted to mandate that group health plans provide particular benefits, or to require that group health plans ensure parity between different kinds of benefits, Congress knew how to write such a law. It did not do so in this statute. To the extent that Congress

———————

[2] DaVita's related proxy theory—that singling out outpatient dialysis is simply a proxy for singling out individuals with end-stage renal disease because those individuals disproportionately receive outpatient dialysis—likewise finds no support in the statutory text. The statute requires that a plan provide the same dialysis benefits regardless of whether an individual has end-stage renal disease. If a plan provides the same benefits to all individuals, the plan does not "differentiate *in the benefits it provides*" to individuals with and without end-stage renal disease. §1395y(b)(1)(C)(ii) (emphasis added). This statute is a coordination-of-benefits statute, not a traditional antidiscrimination statute.

wants to create such a system going forward, Congress of course may do so.

In sum, the Marietta Plan does not "differentiate in the benefits it provides" to those with end-stage renal disease and those without end-stage renal disease.

## B

DaVita also contends that a plan that provides limited coverage for outpatient dialysis impermissibly "take[s] into account" the Medicare eligibility of plan participants with end-stage renal disease in violation of the statute. To reiterate, that statutory provision states that a plan "may not take into account that an individual is entitled to or eligible for" Medicare. 42 U. S. C. §1395y(b)(1)(C)(i); see also §426–1. For example, a plan may not terminate coverage, limit coverage, or charge higher premiums for an individual who has Medicare coverage due to end-stage renal disease. See 42 CFR §§411.108(a)(3), (5)−(6).

As already discussed, the Marietta Plan's terms, including its terms of coverage for outpatient dialysis, are uniform for all individuals. Because the Plan provides the same outpatient dialysis benefits to all Plan participants, whether or not a participant is entitled to or eligible for Medicare, the Plan cannot be said to "take into account" whether its participants are entitled to or eligible for Medicare.

\*     \*     \*

Because the Marietta Plan's terms as relevant here apply uniformly to all covered individuals, the Plan does not "differentiate in the benefits it provides" to individuals with end-stage renal disease or "take into account" whether an individual is entitled to or eligible for Medicare. We therefore reverse the judgment of the U. S. Court of Appeals for the Sixth Circuit and remand the case for further proceedings consistent with this opinion.

*It is so ordered.*

# SUPREME COURT OF THE UNITED STATES

_____

No. 20–1641

_____

## MARIETTA MEMORIAL HOSPITAL EMPLOYEE HEALTH BENEFIT PLAN, ET AL., PETITIONERS *v.* DAVITA INC., ET AL.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

[June 21, 2022]

JUSTICE KAGAN, with whom JUSTICE SOTOMAYOR joins, dissenting in part.

Today the Court crafts for the Medicare Secondary Payer Act (MSPA) a massive and inexplicable workaround. The MSPA instructs that a group health plan "may not differentiate in the benefits it provides between individuals having end stage renal disease and other individuals covered by such plan on the basis of the existence of end stage renal disease, the need for renal dialysis, or in any other manner." 42 U. S. C. §1395y(b)(1)(C)(ii). The majority holds that the plan here does not so "differentiate" because it draws distinctions only between dialysis and other treatments—not between individuals with end stage renal disease and individuals without it. See *ante*, at 6, n. 2. That conclusion flies in the face of both common sense and the statutory text.*

One fact is key to understanding this case: Outpatient dialysis is an almost perfect proxy for end stage renal disease. Virtually everyone with end stage renal disease—and

—————

*Like the majority, I am unpersuaded by DaVita's arguments concerning disparate-impact liability and the MSPA's separate take-into-account clause. See *ante*, at 5, 7. But I part ways with the majority as to DaVita's "proxy" theory (which the majority relegates to a footnote). See *ante*, at 6, n. 2.

hardly anyone else—undergoes outpatient dialysis. Ninety-seven percent of people diagnosed with end stage renal disease—all those who do not obtain a preemptive kidney transplant—undergo dialysis. See National Institutes of Health, United States Renal Data System, 2021 Ann. Data Rep.: End Stage Renal Disease, ch. 1, figure 1.2, https://adr.usrds.org/2021/end-stage-renal-disease. And 99.5% of DaVita's outpatient dialysis patients have or develop end stage renal disease. See Brief for Respondents 6.

Because that is so, common sense suggests that we should not care whether a health plan differentiates in benefits by targeting people with end stage renal disease, or instead by targeting the use of dialysis. When "status and conduct" are proxies for each other, "[o]ur decisions have declined to distinguish" between them. *Christian Legal Soc. Chapter of Univ. of Cal., Hastings College of Law* v. *Martinez*, 561 U. S. 661, 689 (2010). So, for example, we have explained that a penalty for "homosexual conduct" is a penalty for "homosexual persons." *Lawrence* v. *Texas*, 539 U. S. 558, 575 (2003). And likewise, a "tax on wearing yarmulkes is a tax on Jews." *Bray* v. *Alexandria Women's Health Clinic*, 506 U. S. 263, 270 (1993). The same goes here: A reimbursement limit for outpatient dialysis is in reality a reimbursement limit for people with end stage renal disease. And so a plan singling out dialysis for disfavored coverage "differentiate[s] in the benefits it provides between individuals having end stage renal disease and other individuals." §1395y(b)(1)(C)(ii). That is so even if, as petitioner Marietta notes, dialysis is also a treatment for some miniscule number of people with acute kidney injury. See Reply Brief 13. That a proxy is only 99.5% (not 100%) accurate should make no difference. A tax on yarmulkes remains a tax on Jews, even if friends of other faiths might occasionally don one at a Bar Mitzvah.

And if common sense were not enough, statutory text would come to the rescue. Congress was well aware of the

relationship between end stage renal disease and dialysis—and the text it wrote reflects that knowledge. The statute proscribes not just differentiation "on the basis of the existence of end stage renal disease," but also "on the basis of . . . the need for renal dialysis, or in any other manner." §1395y(b)(1)(C)(ii). The back half of that provision prevents exactly the circumvention the majority today allows. It bars plans from differentiating between people with and without end stage renal disease even when that differentiation is accomplished indirectly—by targeting their treatment, or by relying on some other proxy for the condition. So contra the majority, the statutory text does indeed prohibit differentiation as to services—and not only as to individuals. See *ante*, at 6, n. 2.

That reading also fits with the statute's purpose. As the majority recognizes, the MSPA's renal disease provisions were designed to prevent plans from foisting the cost of dialysis onto Medicare. See *ante*, at 2. Yet the Court now tells plans they can do just that, so long as they target dialysis, rather than the patients who rely on it, for disfavored coverage. Congress would not—and did not—craft a statute permitting such a maneuver. Now Congress will have to fix a statute this Court has broken. I respectfully dissent.